UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BRUCE J. SIMPSON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Bruce J. Simpson, through the undersigned counsel, hereby sues Defendant, Royal Caribbean Cruises Ltd., and alleges the following:

## PARTIES

1. Plaintiff, Bruce J. Simpson, is a resident of Delaware.

2. Defendant, Royal Caribbean Cruises Ltd. (hereinafter "Royal Caribbean") is a Liberian Corporation with its principal place of business in Miami, Florida. Royal Caribbean maintains its principal place of business at 1050 Caribbean Way, Miami, Florida 33132. Royal Caribbean owns and operates the cruise ship *Anthem of the Seas*.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

1

4.     The Court has jurisdiction over Royal Caribbean pursuant to Florida Statutes § 48.193 because (a) Royal Caribbean is engaged in substantial and not isolated business activity within this state, and routinely operates in the waters of this state; (b) the causes of action set forth herein arise from Royal Caribbean, personally and/or through its agents, operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; and (c) the causes of action set forth herein arise from Royal Caribbean, personally and/or through its agents, committing tortious acts in whole or in part within this state.

5.     Venue is proper in this Court because Royal Caribbean's principal place of business is within Miami-Dade County, and a substantial part of the events or omissions giving rise to the causes of action set forth herein occurred within the county. The cruise line ticket at issue also requires that suit be brought in this Court.

6.     Royal Caribbean may be served with this Complaint under Florida Statutes §§ 48.081, 48.091, 48.181, 607.1501 and/or 607.1507.

## PRELIMINARY ALLEGATIONS

7.     Royal Caribbean owned, operated, managed, maintained, and/or controlled the *Anthem of the Seas*, including the Captain, officers, crew, and medical personnel, equipment, and facilities on board.

8.     Royal Caribbean was aware of the storm off the Atlantic coast but nevertheless chose to send the *Anthem of the Seas* out directly into the storm. This conscious decision placed all of the passengers and crew of the *Anthem of the Seas* at serious risk.

9.     The crew of the *Anthem of the Seas*, including its Captain, officers, and medical personnel, were in regular, full-time employment of the Royal Caribbean and/or the ship, as

salaried crew members, subject to the ship's discipline and the master's orders. They were also subject to the control of Royal Caribbean's shore-side operations located in Miami, Florida.

10. Royal Caribbean had the right to hire and fire its crew.

11. Royal Caribbean is directly responsible and liable for its actions and the actions of its crew, including the Captain, for choosing to sail into a hurricane-force storm.

12. Royal Caribbean is directly responsible and liable for its actions and the actions of its crew, including the medical personnel on board, for the lack of treatment of Plaintiff. Royal Caribbean is also liable under a theory of *respondeat superior* and/or apparent agency.

13. The Captain, officers, and crew were employees and/or actual agents and/or apparent agents of Royal Caribbean, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

14. The Captain, officers, and crew were represented to Plaintiff and the ship's passengers as employees of Royal Caribbean through signs, documents, and uniforms. The Captain, officers, and crew were also paid by Royal Caribbean. Royal Caribbean knew that the Captain, officers, and crew represented themselves to be employees of Royal Caribbean and allowed them to represent themselves as such. Plaintiff detrimentally relied on these representations and proceeded on a cruise in which he was severely injured.

## FACTS

15. On February 6, 2016, Bruce Simpson and his husband, boarded the Royal Caribbean *Anthem of the Seas* for a cruise from New Jersey to Florida, the Bahamas, and back. Plaintiff and his husband were paying passengers.

16. In the days prior to the *Anthem of the Seas*' departure, multiple weather forecasters and meteorologists predicted a serious storm off the Atlantic coast. The storm was predicted to have up to hurricane potential.

3

17. Despite knowing about the serious storm, Royal Caribbean decided to send the *Anthem of the Seas* out into the Atlantic Ocean, placing Plaintiff, and the rest of the passengers and crew, in grave danger.

18. The *Anthem of the Seas*' previous two cruises out of New Jersey were delayed because of weather, and Royal Caribbean did not want to delay a third cruise.

19. On the morning of February 7, 2016, the first full day of the cruise, the storm began.

20. At around 2:00 p.m. on February 7, 2016, the storm became so severe that the Captain ordered all passengers to stay in their rooms for safety. Despite this order—and the obvious danger the passengers and crew were in—Royal Caribbean sailed the *Anthem of the Seas* farther into the storm.

21. While confined to their rooms, the Captain repeatedly told the passengers that the ship was in contact with Royal Caribbean's main offices in Miami as well as the Coast Guard. Only later did Plaintiff discover that the ship was not in contact with the Coast Guard. Instead, the Coast Guard reached out to the *Anthem of the Seas* after seeing the social media posts of the *Anthem of the Seas*' passengers during the storm.

22. The storm progressively worsened. The ship was tossed about by 10-, 20-, and even 30-foot waves and was battered by winds of well over 100 miles per hour. *See* Ex. A (photographs of the waves). The Captain repeatedly informed the passengers that the winds were hitting 160-180 miles per hour. The storm was so powerful that the *Anthem of the Seas*—a 1,141-foot-long ship weighing over 160,000 tons—pitched back and forth, sometimes tipping at a 45-degree angle.

23. The *Anthem of the Seas* was seriously damaged in the storm. *See* Ex. B (photographs of the damage to the ship).

24. While Plaintiff and his husband were confined to their room for safety, the *Anthem of the Seas* began to rock and tilt violently. Everything that wasn't bolted to the floor in Plaintiff's room was moving. Plaintiff was holding onto the bed, and Plaintiff's husband was holding onto the couch in their room.

25. As the storm worsened, Plaintiff and his husband became increasingly nervous. Fearing that the ship may not make it through the storm, Plaintiff and his husband checked the room to see if there were any life preservers. They couldn't find any. Plaintiff has been on nearly 40 cruises, and never before was he unable to find life preservers in his room.

26. The storm continued for hours.

27. Eventually, Plaintiff needed to use the restroom. He stood up from the bed to make his way to the restroom, but as soon as he stood up, the ship pitched violently, flinging Plaintiff nearly 18 feet, from the edge of his bed, head first into the exit door of his room. Plaintiff was hurled across the room with such force that he was knocked unconscious.

28. Plaintiff's husband saw that Plaintiff flew into the door with such speed that Plaintiff immediately crumpled to the floor, completely unconscious.

29. Plaintiff was especially at risk when he was thrown through the air and against the door because he has two aneurisms. If the door handle hit one of his two aneurisms (one above Plaintiff's heart and the other in Plaintiff's abdomen), Plaintiff would have bled to death in minutes.

30. As soon as Plaintiff was thrown against the door, Plaintiff's husband rushed to Plaintiff to prevent further injuries. Plaintiff's husband attended to Plaintiff until Plaintiff regained consciousness.

31. As a result of being flung against the door of his room, Plaintiff was injured: he had a concussion, his left eye was bruised, his wrist was sprained or broken, his neck was stiff and painful, and his ribs and torso were bruised and hurting. The force of being thrown nearly 18 feet into a door caused Plaintiff significant injury.

32. After Plaintiff was injured, his husband dialed "0" on the room's phone to seek medical attention for Plaintiff. Plaintiff's husband was told to dial "911"—Royal Caribbean's internal emergency number—so that he could speak to someone in medical. Plaintiff's husband dialed "911" and was connected with medical. However, Plaintiff's husband was told that the medical team was attending to other injured passengers at that time and that as long as Plaintiff was still breathing and not bleeding, he should wait until the storm calmed down to seek further medical attention.

33. Plaintiff and his husband endured the rest of the night, and the *Anthem of the Seas* continued to sail into the storm.

34. The next morning, Plaintiff went to seek medical attention from the medical office onboard the *Anthem of the Seas*. When Plaintiff arrived there, he found that the medical office was closed until later that afternoon. Plaintiff returned to his room and called Royal Caribbean to open the medical office so he could receive treatment for his injuries. A few minutes later, an announcement was made that the medical office would be opening immediately.

35. Plaintiff made his way back to the medical office, only to find the office crowded with other injured passengers. Some were in wheelchairs and others had their arms in slings.

36. Plaintiff again waited to receive treatment for his injuries. While he waited, Plaintiff filled out an accident report, which he submitted to Royal Caribbean.

37. Plaintiff eventually was seen by the onboard physician. Plaintiff was told that he didn't have any life-threatening injuries, but that he should watch for specific signs and symptoms of a slow brain bleed due to the force by which Plaintiff was hurled against the door of his room. The physician also put together a report of Plaintiff's injuries.

38. However, the physician was unable to determine if Plaintiff had broken his hand, wrist, or ribs because the X-Ray machine was damaged during the storm.

39. Despite the serious nature of his injuries, Royal Caribbean never followed up with Plaintiff about his injuries. Not while Plaintiff was onboard the *Anthem of the Seas*, and not once Plaintiff returned home.

40. Later that day, the Captain announced to the passengers that the past 24-36 hours was the worst sea conditions he had seen in his entire career. The Captain then told the passengers that the ship had detected another storm outside of Jacksonville, Florida, and to avoid this second storm, the *Anthem of the Seas* would be returning to New Jersey.

41. On February 10, 2016, the *Anthem of the Seas* docked in New Jersey around 6:00 p.m., but the passengers weren't allowed to disembark until roughly 9:00 p.m.

## COUNT 1: NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1-41 of this Complaint.

42. Plaintiff was injured due to the fault and negligence of Royal Caribbean and/or its employees, agents, apparent agents, or servants as follows:

   a. Failure to supervise its crew;

   b. Failure to properly train its crew;

   c. Failure to provide adequate crew;

   d. Failure to safely operate the vessel;

    e.  Operating the vessel in an improper and unsafe manner;

    f.  Failure to maintain the vessel;

    g.  Failure to employ an adequately trained captain;

    h.  Failure to recognize, heed, or acknowledge multiple warnings of severe weather off the Atlantic coast;

    i.  Failure to warn or protect Plaintiff from the severe weather off the Atlantic coast;

    j.  Failure to timely divert the ship to avoid the severe weather;

    k.  Failure to disclose to passengers that the *Anthem of the Seas* was sailing into a dangerous and growing storm;

    l.  Failure to provide life preservers in Plaintiff's room;

    m.  Negligent hiring and retention of the ship's crew, including but not limited to the captain, other officers, and any employees responsible for the decision to proceed into the storm; and

    n.  Failure to develop and institute adequate procedures and policies to address these hazards.

43.  Royal Caribbean knew of these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Royal Caribbean, leaving no doubt that Royal Caribbean either knew or should have known about them.

44.  Royal Caribbean knew or should have known that the storm was approaching when it chose to set sail. Despite this knowledge, Royal Caribbean proceeded into the storm putting profits ahead of the safety of its passengers.

45.  At all times, the *Anthem of the Seas* was unseaworthy for the reasons stated above.

46. Defendant is also liable as a matter of law because of its violations of Coast Guard regulations. As such, Plaintiffs maintain negligence *per se* claims against Defendant

47. Given the ease with which this terrible incident could have been prevented, and Royal Caribbean's actual knowledge of the dangers related to sailing into a hurricane-force storm, Royal Caribbean's conduct was wanton, willful, and/or outrageous, and entitles Plaintiff to punitive damages.

48. As a direct and proximate result of Royal Caribbean's conduct, Plaintiff suffered serious injuries when he was thrown across his room due to the severity of the storm.

49. Plaintiff has suffered the following damages as a result of Royal Caribbean's negligence:

   a. Physical injury to Plaintiff's body
   b. Physical pain and suffering
   c. Mental and emotional anguish;
   d. Loss of enjoyment of life;
   e. Disability;
   f. Impairment;
   g. Inconvenience in the normal pursuits and pleasures of life;
   h. Economic Insecurity;
   i. Medical Expenses in the past and future; and
   j. Physical handicap

50. Plaintiff seeks recovery of these damages and all others recoverable under general maritime law, as well as a trial by jury.

## COUNT 2: NEGLIGENCE AGAINST ROYAL CARIBBEAN FOR THE ACTS OF ITS PERSONNEL BASED ON VICARIOUS LIABILITY

## **UNDER *RESPONDEAT SUPERIOR***

Plaintiff re-alleges and incorporates by reference paragraphs 1-41 of this Complaint.

51. On or about February 7, 8 and 9 of 2016, the *Anthem of the Seas* Captain and crew made decisions about whether to sail, or continue sailing, into the storm.

52. They were the employees of Royal Caribbean, or were Royal Caribbean's agents, apparent agents, and/or servants.

53. They were subject to the right of control by Royal Caribbean.

54. They were acting within the scope of their employment or agency.

55. Royal Caribbean acknowledged that the crew, officers, and Captain would act on Royal Caribbean's behalf, and they accepted the undertaking.

56. Royal Caribbean is vicariously liable for the acts of the Captain, officers, and crew, as set forth in the Preliminary Allegations, Facts, and Count 1 above. Those acts proximately caused Plaintiff's injuries and damages.

57. Plaintiff has suffered the following damages as a result of the negligence of Royal Caribbean's personnel, for whom Royal Caribbean is vicariously liable:

   a. Physical injury to Plaintiff's body

   b. Physical pain and suffering

   c. Mental and emotional anguish;

   d. Loss of enjoyment of life;

   e. Disability;

   f. Impairment;

   g. Inconvenience in the normal pursuits and pleasures of life;

   h. Economic Insecurity;

  i. Medical expenses in the past and future; and

  j. Physical handicap.

 58. Plaintiff seeks recovery of these damages and all others recoverable under general maritime law, as well as a trial by jury.

### COUNT 3: NEGLIGENCE AGAINST ROYAL CARIBBEAN FOR THE ACTS OF ITS PERSONNEL BASED ON VICARIOUS LIABILITY UNDER APPARENT AGENCY

Plaintiff re-alleges and incorporates by reference paragraphs 1-41 of this Complaint.

 59. On or about February 7, 8, and 9 of 2016, the *Anthem of the Seas* Captain, officers, and crew made decisions about whether to sail, or continue sailing, into the storm.

 60. They were represented to Plaintiff as the employees, agents, apparent agents, or servants of Royal Caribbean.

 61. They were subject to the right of control by Royal Caribbean.

 62. They wore Royal Caribbean insignia and disseminated documents with the Royal Caribbean insignia. They commanded and controlled the *Anthem of the Seas* and spoke and acted as though they were authorized to do so by Royal Caribbean. Royal Caribbean never took any actions to indicated that they were not Royal Caribbean's agents.

 63. They were acting within the scope of their employment or agency.

 64. Royal Caribbean acknowledged that the Captain, officers, and crew would act on Royal Caribbean's behalf, and thereby affirmed the Captain's, officers', and crew's agency representations.

 65. Royal Caribbean is vicariously liable for the acts of the Captain, officers, and crew, as set forth in the Preliminary Allegations, Facts, and Count 1 above. Those acts proximately caused Plaintiff's injuries and damages.

66. Plaintiff has suffered the following damages as a result of the negligence of Royal Caribbean's personnel, for whom Royal Caribbean is vicariously liable:

   a. Physical injury to Plaintiff's body
   b. Physical pain and suffering
   c. Mental and emotional anguish;
   d. Loss of enjoyment of life;
   e. Disability;
   f. Impairment;
   g. Inconvenience in the normal pursuits and pleasures of life;
   h. Economic Insecurity;
   i. Medical expenses in the past and future; and
   j. Physical handicap

67. Plaintiff seeks recovery of these damages and all others recoverable under general maritime law, as well as a trial by jury.

WHEREFORE Plaintiff, Bruce Simpson, respectfully requests that this Court enter judgment against Defendant, Royal Caribbean Cruises Ltd., for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth herein.

Respectfully submitted,

/s/ Scott P. Schlesinger
**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger, Esq.
Florida Bar No. 444952

Scott@schlesingerlaw.com
Jonathan R. Gdanski, Esq.
Florida Bar No. 0032097
jonathan@schlesingerlawoffices.com
Jeffrey L. Haberman, Esq.
Florida Bar No. 98522
JHaberman@schlesingerlaw.com
1212 S.E. 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509

-and-

Kurt B. Arnold – *Pro-Hac Vice anticipated*
Texas Bar No.: 24036150
karnold@arnolditkin.com
Caj D. Boatright – *Pro-Hac Vice anticipated*
Texas Bar No.: 24036237
cboatright@arnolditkin.com
Jason Itkin - *Pro-Hac Vice anticipated*
jitkin@arnolditkin.com
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
***ATTORNEYS FOR PLAINTIFF***