UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BRUCE J. SIMPSON,

 Plaintiff,         **CASE NO. 1:16-cv-20595-PAS**

v.

ROYAL CARIBBEAN CRUISES LTD.

 Defendant.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiffs, Bruce Simpson, Joseph M. Grossman, Elayne Loeser, Fredy Loeser, Stacy Eastman, Anthony Sansone, and Louise Sansone (collectively "Plaintiffs"), through the undersigned counsel, file this Response to Defendant Royal Caribbean Cruises, Ltd. ("Royal Caribbean") Motion to Dismiss Plaintiff's First Amended Complaint and Demand for Jury Trial ("Motion to Dismiss"). In support thereof, Plaintiff respectfully shows as follows:

  This lawsuit became necessary as a result of events which occurred aboard Royal Caribbean's cruise ship, the *Anthem of the Seas*, beginning on or around February 6, 2016. On that date, Plaintiffs boarded the *Anthem of the Seas* for a cruise from New Jersey to Florida, the Bahamas, and back. Compl. [ECF No. 21] at ¶ 21. In the days before the *Anthem of the Seas* was set to sail, multiple weather forecasters and meteorologists predicted a serious storm with hurricane potential off the Atlantic coast. *Id*. at ¶ 22. Despite knowing about the serious storm, Royal Caribbean decided to send the *Anthem of the Seas* out into the Atlantic Ocean, placing Plaintiffs and the rest of the passengers and crew in grave danger. *Id*. On the morning of February 7, 2016, the first full day of the cruise, the storm began. *Id*. By around 2:00 p.m. the same day, the storm

1

became so severe that the Captain ordered all passengers to stay in their rooms for safety; Plaintiffs' rooms, however, did not contain life jackets. *Id*. at ¶¶ 26-27. Despite the Captain's order, Royal Caribbean continued to sail the ship farther into the storm. *Id*. at ¶ 26. While confined to their rooms, the Captain repeatedly assured the passengers that the *Anthem of the Seas* was in contact with Royal Caribbean's main offices in Miami as well as the Coast Guard. *Id*. at ¶ 28. Plaintiffs later learned that the ship was not in contact with the Coast Guard, but rather the Coast Guard contacted the ship after seeing social media posts of the passengers during the storm. *Id*.

The storm progressively worsened, and the *Anthem of the Seas*, a 1,141-foot-long ship weighing over 160,000 tons, was tossed about by 10-, 20-, and even 30-foot waves, at times tipping at a 45-degree angle, and was battered by winds well over 100 miles per hour. *Id*. at ¶ 29. The Captain repeatedly informed the passengers that the winds were hitting 160-180 miles per hour. *Id*. The storm continued for hours, and Plaintiffs endured the rest of night without access or with severely limited access to food while the ship continued to sail into the storm. *Id*. at ¶¶ 30-31. The *Anthem of the Seas* was seriously damaged in the storm; it was later discovered that one of its main engines was damaged during the storm. *Id*. at ¶ 33.

The next day, the Captain announced to the passengers that the past 24-36 hours, he experienced the worst sea conditions he had seen in his entire career. *Id*. at ¶ 32. The Captain then told the passengers that the ship had detected another storm outside of Jacksonville, Florida, and to avoid this second storm, the ship would be returning to New Jersey. *Id*. On February 10, 2016, the *Anthem of the Seas* docked in New Jersey around 6:00 p.m., but the passengers were not allowed to disembark until roughly 9:00 p.m. *Id*. at ¶ 34.

As a result of Royal Caribbean's decision to sail the *Anthem of the Seas* into the storm, Plaintiffs suffered injuries when the ship was tossed by the waves and tilted. *See id*. at ¶¶ 35-91

For example, after being flung across his room and hitting the exit door of his room during the storm, Plaintiff Simpson suffered a concussion, his left eye was bruised, his wrist was sprained or broke, his neck was stiff and painful, and his ribs and torso were bruised and hurting. *Id*. at ¶¶ 37, 41.  Plaintiff Grossman was seriously injured from being repeatedly slammed against the bulkhead next to his bed onto which he was laying facedown and holding so as to not fall on the floor or be thrown across the room. *Id*. at ¶ 57.  Plaintiff Elayne Loeser was injured when a drawer of a dresser in the room she shared with her husband, Plaintiff Fredy Loeser, suddenly slid open and hit her during the storm. *Id*. at ¶ 67.  In addition, during the storm, Fredy Loeser, a diabetic, lost access to his insulin and was unable to find sugar until the day the storm stopped. *Id*. at ¶ 66, 70-72.  Mr. Loeser has been unable to get his blood sugar to return to normal since the cruise and is now in the process of seeing a specialist. *Id*. at ¶ 73.  Similarly Plaintiff Eastman is a diabetic and was forced to endure hours in her room without food while her blood sugar dropped. *Id*. at ¶ 81.  Eastman has also suffered from post-traumatic stress disorder since the incident. *Id*. at 82.  Plaintiff Louisa Sansone suffered physical injuries, her body and eye were badly bruised, after being thrown off her bed during the storm. *Id*. at 88, 90.  Both Louise and her husband, Anthony, were fearful for lives during the storm.  Id. at ¶ 89.  Since getting of the ship, Plaintiff Anthony Sansone has suffered from anxiety attacks. *Id*. at 91.

Each Count contained in Plaintiffs' First Amended Complaint state claims against Royal Caribbean upon which relief may be granted.  Accordingly, Royal Caribbean's Motion to Dismiss should be denied in its entirety.

## MEMORANDUM OF LAW

A. **Pleading Requirements**

In order to satisfy the Federal Rules of Civil Procedure's pleading requirements, the Plaintiffs' complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (citing *Conley v. Gibson*, 344 U.S. 41, 47 (1957) (internal quotations omitted); *see also* FED. R. CIV. P. 8(a)(2). The Eleventh Circuit has recognized "the well established policy in federal courts favoring liberal pleading requirements." *Warner v. Alexander Grant & Co*., 828 F.2d 1528, 1531 (11th Cir. 1987). Further, "[a] statement in a pleading may be adopted be reference elsewhere in the same pleading or in any other pleading or motion." *See* FED. R. CIV. P. 10(c).

### B. 12(b)(6) Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *citing Atlantic Corp. v. Twombly*, 449 U.S. 544, (2007). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court further states that "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When reviewing a Motion to Dismiss the Eleventh Circuit has stated, "we accept the well-plead allegations in the complaint and construe them in the light most favorable to the Plaintiff." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1227 (11th Cir. 2014) (*citing Chaparro v. Carnival Corp.*, 693 F.3d 133, 1335 (11th Cir.). Determining whether a complaint states a plausible claim for relief is a context specific task that requires the reviewing Court to draw on judicial experience and common sense. *Id.* at 679.

**C. Plaintiffs' actual agency and apparent agency claims are properly pleaded**

Royal Caribbean does not attack the sufficiency of the pleading of Plaintiffs' actual agency and apparent agency claims, which are Counts II and III respectively. Rather, Royal Caribbean merely contends that Plaintiffs' actual agency and apparent agency claims are merely subsets of their direct negligence claims and the Court ought to require Plaintiffs to replead the negligence counts into a single count. All three related negligence claims flow from a straightforward factual narrative and only one Defendant—Royal Caribbean. The Complaint is not confusing. The two claims relating to agency, Counts II and III, simply elucidate some additional facts that show how Royal Caribbean is vicariously liable under *respondeat superior* and apparent agency, for the negligent acts set forth in Count I. These claims could be turned into one count if the Court so desires, but the additional facts are separated as their own for simplicity.

The fact that actual agency and apparent agency are not independent causes of action, but instead theories of liability does not necessarily mean that Plaintiffs are required to combine all of their theories of liability into a single count. The cases cited by Royal Caribbean do not support such a view, rather the two cases merely state that actual agency and apparent agency are theories of liability, and neither case suggests that the theories of liability must be combined into a single count. *See Flaherty v. Royal v. Royal Caribbean Cruises, Ltd.*, 2015 WL 8227674, at *6 (S.D. Fla. Dec. 7, 2015); *see also Barbe v. Apax Partners Europe Managers, Ltd*., 359 F. App'x 82, 84 (11th Cir. 2009). Courts in the Southern District of Florida and Eleventh Circuit have not commented on how a plaintiff should structure his compliant in the context of negligence based on theories of direct negligence and actual and/or apparent agency; this Court, however, has allowed plaintiffs to proceed with their claims separated into different counts based on direct negligence, actual agency, and apparent agency. *See, e.g., Gentry v. Carnival Corp*., No. 11-

21580-CIV, 2011 WL 4737062, at *3-6 (S.D. Fla. Oct. 5, 2011) (analyzing and denying defendant's motion to dismiss plaintiff's two negligence counts based on direct negligence and apparent agency and not requiring to replead the two counts into a single count). For the reasons stated, Plaintiffs respectively request the Court to deny Royal Caribbean's request that Plaintiffs replead their negligence counts into a single count.

### D. Plaintiffs' Claims for Punitive Damages are Proper

Royal Caribbean contends that because Plaintiff has asserted a negligence claim for torts committed abroad a cruise ship that punitive damages are unavailable under general maritime law. Judicial precedent, however, indicates that punitive damages have been historically available in general maritime causes of action (such as the one asserted by Plaintiff). *See The Amiable Nancy,* 16 U.S. (3 Wheat.) 546, 558, 4 L.Ed. 456 (1818); *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 354 (1st Cir.1988); *Protectus Alpha Navigation Co. v. North Pacific Grain Growers,* 767 F.2d 1379, 1385 (9th Cir.1985); *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048, 1051–52 (1st Cir.1973); *In re Marine Sulphur Queen,* 460 F.2d 89, 105 (2d Cir.1972); *Pino v. Protection Maritime Ins. Co.,* 490 F.Supp. 277, 281 (D.Mass.1980); *Dredge General,* 1944 A.M.C. 948, 948 (S.D.Fla.1944); *The Ludlow,* 280 F. 162, 163 (N.D.Fla.1922); *The Seven Brothers,* 170 F. 126, 127 (D.R.I.1909); *Gallagher v. The Yankee,* 9 F.Cas. 1091, 1093 (N.D.Cal.1859) (No. 5,196), *aff'd,* 30 F.Cas. 781 (C.C.N.D.Cal.1859) (No. 18,124); *Ralston v. The States Rights,* 20 F.Cas. 201, 209–10 (E.D.Pa.1836) (No. 11,540). When it comes to claims <u>against the employer</u>, however, that understanding began to change when the U.S. Supreme Court issued *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) upon which *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382 (5th Cir. 2014) (en banc), a case cited by Royal Caribbean, relies.

*Miles* did not address punitive damages. Instead, the question in *Miles* was whether a

plaintiff could recover loss of society damages in a wrongful death cases brought under the general maritime law against his employer. *Miles v. Apex Marine Corp.*, 498 U.S. 1, 19-20 (1990). The *Miles* Court found that these damages were unavailable because the Death on the High Seas Act and the Jones Act prohibit loss of society damages in wrongful death cases and, therefore, it would be inconsistent to allow those damages under the general maritime law. *Id*. at 31-33. Even though *Miles* only addressed whether loss of society damages were allowed in wrongful death cases against employers, some courts interpreted *Miles* as barring punitive damages in non-fatal, personal injury actions as well.

In 2008, though, the U.S. Supreme Court re-addressed the issue of punitive damages availability in general maritime causes of action. *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). In that case, the Supreme Court ordered Exxon to pay more than $500 million in punitive damages to maritime plaintiffs. *Id*. at 515. In coming to its conclusion, the Supreme Court explained how to determine when the ratio of compensatory damages to punitive damages would become too large under the general maritime law. *Id*. at 501-15 (finding that "a 1:1 ratio[1], which is above the median award, is a fair upper limit in such maritime cases."). Defendant's argument that *Miles* and *McBride* (neither of which addressed whether a maritime plaintiff can recover punitive damages against non-employers) somehow made punitive damages unavailable to *all* maritime plaintiffs cannot be squared with the Supreme Court's decision in *Baker* that allowed a $500 million punitive damage award and explained how to determine whether a jury's punitive damage award is excessive.

Defendant's argument is further undercut by a 2009 U.S. Supreme Court decision that made clear that cases holding that *Miles* barred punitive damages against the employer were

---

[1] The Supreme Court also made clear that punitive damages awards that exceed the 1:1 ratio are permissible is cases where certain aggravating factors are present.

7

wrongly decided.  *See Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).  In *Atlantic Sounding Co.*, the Supreme Court held that a plaintiff may recover punitive damages under the general maritime law cause of action of maintenance and cure against his employer.  *Id*. at 407 ("historically, punitive damages have been available and awarded in general maritime action, including some in maintenance and cure.  We find nothing in *Miles* or the Jones Act that eliminates that availability.").  In its holding, the Supreme Court noted that "punitive damages have long been an accepted remedy under general maritime law" and "nothing in the Jones Act altered this understanding."  *Id*. at 424.   In doing so, the Supreme Court explicitly disapproved of cases that broadly extended *Miles* to cover personal injury cases that sought punitive damages.  *Id*. at 418-24. Indeed, the *Atlantic Sounding Co.* Court stated:

> In *Miles*, petitioners argue, the Court limited recovery in maritime cases involving death or personal injury to the remedies available under the Jones Act and the Death on the High Seas Act (DOHSA).  **Petitioners' reading of *Miles* is far too broad**.

 *Id*. at 418-19 (internal citations omitted) (emphasis added).

Fortunately, the *Atlantic Sounding Co.* Court laid down a framework for courts to follow when determining whether punitive damages are available under the general maritime law. *Atlantic Sounding Co.* made clear that lower courts should allow punitive damages under the general maritime law if: (1) punitive damages have traditionally been available; and (2) Congress has not restricted the damages via statute.  *Id*. at 414-15; *Id*. at 420 and 424.

Here, both requirements are met.  Punitive damages have traditionally been available in general maritime negligence and unseaworthiness causes of action, and Congress has not restricted the availability of them in non-fatal, personal injury actions.  *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 702 (1st Cir. 1995) ("plaintiffs are entitled to forms of relief traditionally available under the general maritime law, including punitive damages."); *Mussa v. Cleveland Tankers*, 802 F.Supp.88,

8

89-90 (E.D. Mi. 1992) (holding that punitive damages are available to a seaman when bringing a cause of action under general maritime against a third party); *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 623 (5th Cir. 1981) ("punitive damages may be recovered under general maritime law upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions.").

Royal Caribbean contends that the Supreme Court's decision in *Atlantic Sounding Co.* does not overrule the Eleventh Circuit's opinion in *In re Amtrak*, 121 F.3d 1421, 1429 (11th Cir. 1993), holding passengers can pursue punitive damages only after a showing of intentional misconduct under general maritime law.  As Royal Caribbean admits, Motion to Dismiss at 3, however, this Court has directly rejected this argument.  *See Doe v. Royal Caribbean Cruises, Ltd.*, No.11-23323-CIV, 2012 WL 920675, at * 3 (S.D. Fla. Mar. 19, 2012) (citing *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620, 2011 WL 3703329 (S.D. Fla. Aug. 23, 2011)) (finding that *In re Amtrak* is no longer good law after *Atlantic Sounding Co*. and denying Royal Caribbean's motion to dismiss or in alternative to strike plaintiff's demand for punitive damages); *see also Vairma v. Carnival Corp.*, No. 15-cv-20724-PAS, 2016 WL 1031308, at *1 (S.D. Fla. 2016 ("this court previously held punitive damages are recoverable in a maritime negligence action for willful, wanton, or outrageous conduct.").  This Court further held that:  "Following *Atlantic Sounding*, punitive damages are therefore available in a maritime personal injury actions, as at common law, for 'wanton, willful, or outrageous conduct.'"  *Doe*, 2012 WL 920675, at * 3. (citing *Atlantic Sounding Co.*, 129 S.Ct. at 2566; *Lobegeiger*, 2011 WL 3703329, at *7).   Thus, a plaintiff is no longer required to prove intentional misconduct, but may recover punitive damages upon a showing of wanton, willful, or outrageous conduct." As Royal Caribbean concedes that Plaintiffs have pleaded entitlement to punitive damages on the basis of wanton, willful, or reckless conduct,

9

Motion to Dismiss at 5, and wanton, willful, or outrageous conduct is the proper standard for recovering punitive damages, Plaintiffs respectfully request this Court to deny Royal Caribbean's Motion to Dismiss.

## **CONCLUSION**

FOR THESE REASONS, Plaintiffs respectfully requests this Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Demand for Jury Trial and for all such other and further relief to which Plaintiff may show herself to be justly entitled to under the law.

Date: April 18, 2016

                                                      Respectfully submitted,

                                                      /s/ Scott P. Schlesinger
**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger, Esq.
Florida Bar No. 444952
scott@schlesingerlaw.com
Jonathan R. Gdanski, Esq.
Florida Bar No. 0032097
jonathan@schlesingerlawoffices.com
Jeffrey L. Haberman, Esq.
jhaberman@schlesingerlaw.com
1212 S.E. 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: 954.467.8800
Facsimile: 954.320.9509

      -and-

Kurt B. Arnold — *Pro-Hac Vice*
Texas Bar No.: 24036150
karnold@arnolditkin.com
Jason A. Itkin — *Pro-Hac Vice*
Texas Bar No.: 24032461
jitkin@arnolditkin.com
Caj. D. Boatright — *Pro-Hac Vice*
Texas Bar No.: 24036237
cboatright@arnolditkin.com

**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, Texas 77007
Telephone: 713.222.3800
Facsimile: 713.222.3850

***ATTORNEYS FOR PLAINTIFF***

CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2016, I electronically filed the foregoing document with the Clerk of Court and all parties and counsel of record using CM/ECF.

    s/    Jeffrey L. Haberman